May it please the Court, my name is Ray Aragon, and with my colleague Shannon Kahn, I represent Petitioner Miguel Medina in this case. Mr. Medina is appealing a final order of deportation on due process grounds. Respectfully reserve three minutes of my time for rebuttal, Your Honor. I didn't get this case. I don't get it. If I understand it right, he's saying that he has a well-founded fear because the government may still have videotapes of him, different government. There's been a lot of change in Guatemala, and the government may have videotapes of him participating in some kind of student or human rights protest 25 years ago. It's just so implausible on its face. I don't see how it could get the first base. It's like the Parkinson's disease is the only real issue. Well, Your Honor, I beg to differ with you because the issue is he testified that he was engaged in those protests, that people that he engaged in those protests were filmed. 25 years ago. That is true, Your Honor, and that he feels that they were filmed and believes the government is still looking for him. Now, the issue is I can agree with you that the record below is so sparse and paltry that it's difficult to draw the conclusion one would want, but there's specific reasons for that. We can read the country report and know about the settlement of the Civil War in Guatemala, the reconciliation, and we can read the record and determine that his family has stayed there without problem and that he went back in 1992 with no problem. Well, Your Honor, in response to that, I can't say that he, all of the evidence that is now before the court, all the evidence that's in the record actually supports his claim for asylum because the report that you cited also says that there's a lot of violence, including death by police squads and others, that goes completely unpunished, that there's a lot of violence for people who protest. So everything that's there, and I admit, I acknowledge that the record is very sparse. That's one of the problems here. But everything that's in there supports his claim for asylum. I think the court will conclude he did a heroic job, howled as he was, in jail, sick, as you said, almost unable to walk, with no money, even to use the phone, to present himself here. And so the point that he returned was to Guatemala. What about this going back business? He returned one time to Guatemala for 15 days in this period. I think the court should draw no conclusion from that because he didn't return permanently. And what's more, the court recently decided... I don't know. People who fled from Romania didn't go back. People who fled from Soviet Union didn't go back. People who fled from Nazi Germany didn't say, you know, I'm going to go take a little holiday in Berlin. They didn't do that. I mean, people who flee, flee. And so long as they think the government is still after them, they don't take 15 days and go in and visit. I mean, it's very powerful proof that he didn't think there was still any danger. This was 1992, which would have been 16 years ago. It had been some years, Your Honor. What can the court conclude from that? I'm going to suggest that he had an important attachment to his family and that he took a significant risk. Can they even play those videotapes anymore? I mean, gee, I can't play the media that I recorded 25 years ago. Well, as Your Honor pointed out, it's impossible to say. I mean, one of the findings again... I have a pile of zip disks that I recorded a lot more recently than that. As do I. No kidding. Well, the point here, Your Honor, and we all look at newsreels from 25 and more years ago. These are videotapes. I'm not sure. By an ancient datamax. Mr. Medina's English is not very good, and I don't think he was focused on the technical aspect of what was being recorded. Was it film? Was it videotape? I don't know, and we can't tell. The record doesn't really indicate. But what we do know is that he believes they were recorded, and people that he protested with died. As far as returning, I think what we can conclude is that people who are close to their family sometimes take severe risks. And in Cruz v. Marchesi, which was just decided, No. 0673077, the court found that even several trips home with someone who actually has been suffered past persecution does not rebut the presumption that he will be persecuted if he returns. Okay, desperate people do desperate things, but that doesn't mean that he's not at risk, and that's what we're trying to prove now. Now, I admit, and, Your Honor, you keep pointing this out, the record is very, very sparse. And the reason is here is a sick man who had very little idea of what was going on in his case. Can we give him a break because he's sick? I thought generally with hardship, No. 1, it was the agency's call, and we didn't have jurisdiction to second-guess him on it. And No. 2, usually the hardship has to be to a U.S. citizen if the alien is deported. I have two answers to you, Your Honor. The first is that he was sick. He was defending himself, and the I.I.J. just sat back and let what I think is a complete miscarriage of justice happen. That's why it's important. The man can hardly walk. And as he said, the only thing he was allowed to keep was his wallet, his hat. Okay, he didn't even have the phone numbers. And as he testified, Parkinson's does affect your memory. He couldn't even remember, assuming he had money to make a call, the numbers of his friends who he thought might be able to help him. So he was bound and handcuffed as well as being in detention. Yes, it's very relevant. The second is it points out the sharpness, the importance of the person. It's certainly relevant in a human way. I'm wondering if there's some legal handle for it being relevant to granting relief. Yes, I think there is, Your Honor. It points out that the immigration judge who had an affirmative responsibility to diligently fill out the record did absolutely nothing. And it makes that failure even more severe because just physically looking, you can see the man doesn't have any chance, any hope. And the record reflects he didn't even have any opportunity to figure out what the status of his burden of proof is. He asked the judge that question. He said, can you tell me what other information I might need? And the answer was, I've heard everything you had to say. Okay? He didn't get any help. Isn't that the plight of a pro se deportee, somebody who's in this position? This is what happens. You usually have poor command of the English language. They seldom have the resources to hire a lawyer, or often at least they don't. And few come with a JD or a training in immigration law. And that's the nature of the beast. And we have law that says they're not entitled to a lawyer. Right? No, sir. In fact, the immigration judge had an affirmative duty to fill out the record in this case. And Mr. Medina requested, what type of evidence do I need? I'm sorry, I said they're not entitled to a lawyer and disagreed with me. So I expected the next thing you would say is, yes, he was entitled to a lawyer. Your Honor, no, I think he was entitled to understand that it was not. He was not entitled to a lawyer. No, he was not. Your Honor, one of the issues that comes up in the government's case is they keep saying we're saying he was entitled to a lawyer at government expense. Not true. He's entitled to understanding of the situation. Are you saying he was denied due process because the IJ did not take account of his illness to take a more active role in eliciting the petitioner's case? He was denied due process for a number of reasons. One of them, Your Honor, is that the IJ had an affirmative responsibility to see that the record was filled out. Do you have another case where the IJ didn't do anything bad to deprive the person of due process? I've seen them where the IJ does something bad. The petitioner wants to put on some evidence and the IJ says, I don't want to hear it. And in the circumstances, it's not fair. Sure. But here what you're saying is it's a denial of due process if a man is sick for the IJ not to take extra steps to build a case form, as far as I can tell. And I'm not aware of precedent for it. Okay. Your Honor, first of all, you asked the relevance of Parkinson's disease, and I tried to explain it. Even if he were not sick, the IJ did have an affirmative duty. And the case is for Agamon and Jacinto. And just to point out what I would suggest to you, Your Honor, is the gravity of this situation. Your Honor wrote a very clear dissent in Agamon, and it points out the requirements under Jacinto to the immigration judge has a duty diligently to elicit relevant facts. That's at 296 F. 3rd and 887. But then Your Honor went on to argue that this is a case very different because the IJ was being confused of not even doing more. This is not even a closed case. He didn't even reach that standard of law. Instead, he just sat there and let this man wallow in ignorance when the record clearly reflects he did not understand, even after being read some standard point, that he did not have an opportunity that he might be able to get a lawyer. He said, do you want to try to get a lawyer? He said, I have no money. He didn't understand. Your Honor, as I see my time is almost up, may I have members who have a few minutes for rebuttal? We'll see. Here we are. Sorry, ma'am. Good morning. My name is Catherine Moore, and I represent the Respondent of the United States Attorney General. Mr. Medina applied for asylum 20 years after he entered the United States. He was afforded five separate hearings before an immigration judge and appealed to the Board of Immigration Appeals. And he, not to be flippant about the fact that he was pro se in those proceedings, but he did appear to adequately represent himself when he was pro se before the board. I just want to point out that in the record, it shows that he filed a notice, a timely notice of appeal to the board, a six-page brief on legal paper with a certificate of service. So this record doesn't show that his Parkinson's disease actually prohibited him from representing himself in administrative proceedings. Now, this record is not sparse. It shows that the immigration judge ---- He probably got somebody to do it for him. It's hard to write with Parkinson's. That is possible, although he did not have an attorney who noticed an appearance. If somebody's not a lawyer, often they'll go straight rather than sign their name and pretend to be a lawyer. I don't know, Your Honor, but that sounds correct. Well, they don't have to go to jail for practicing law without a license usually. But the government submits to the immigration judge and the DHS attorney. They did question Mr. Medina at length about his claims, and he failed to establish that he has an objectively reasonable fear of future persecution if he returns to Guatemala. Now, first of all, Mr. Medina hasn't established that he meets the definition of refugee under the Immigration and Nationality Act. Even with the benefit of present counsel, he has not shown that he has any particular political opinion or that the government of Guatemala will persecute him on account of his Parkinson's. What about the taking away asylum and persecution for any of the five statutory reasons? Is there any legal handle for him to get relief from this court because of his disease? No, Your Honor. During his proceedings before the immigration judge, she did note that he doesn't qualify for other forms of statutory relief. For example, he's already applied for legalization under the 1996 IRCA, and he did not qualify that because of his criminal record. So I know of no basis under United States law for him to obtain relief from his criminal record. So he might have gotten amnestied. That is correct, Your Honor. But he was, so being sick won't cut it. That is correct, Your Honor. Being sick doesn't cut it. Being sick is not one of the five protected grounds under the Immigration and Nationality Act. And he just hasn't shown that he will be persecuted if he's returned to Guatemala. He hasn't shown that he has an objectively reasonable fear of future persecution if he returns to Guatemala. Okay. Thank you. Thank you. You may have a minute or a bottle if you wish. You may have a minute or a bottle if you wish. Thank you, Your Honor. I would just like to point out, Your Honor, that the record is really sparse. I think the main thing the IJ said was, what else? Okay. And this, once again, was from a man who was sick. And the Parkinson's, which you've raised a valid question, Your Honor, but I think the point is because of his inability to represent himself and his lack of knowledge about the inferent, about the, even the meaning of the hearing, he was sort of a sitting duck there. And then as far as being deported, it makes him a sitting duck, a highly vulnerable person when he returns. So, and this issue of the, his failure to establish whatever, Your Honors may judge that had he been informed, he would have, had he been informed by counsel, he would have done a better job. But in fact, all the evidence here supports his claim. There was no contributing evidence. There was no adverse finding of credibility. So everything he said is entitled to a, to credibility. And in fact, he did make, do a good job. Even handicapped as he was, physically and educationally and everything, he still did a good job. And the government presented no evidence except for this report that actually supports his hearing. So in conclusion, I'd like to say that this is a very important case, Your Honor, for several reasons. First, it's, it, he was not entitled to any meaningful hearing. And if you look at it and if you read the government's brief, they don't really, they don't defend this. They just said he waived everything. He didn't know what he was doing. And then when he tried to, he waived it. Okay? Which isn't really fair. In fact, it's kind of outrageous. His hearing wasn't really worthy of a name. And it changed the whole process. The government needs to be held to a higher standard than that. He's entitled to more. The system is entitled to more. And the government needs to be held to a higher standard. Otherwise, cases like this become an invitation for the government to mistreat detainees and then use their ignorance of the system as a club to batter them more. The Court shouldn't permit that. And we request that the case be remanded for more hearing. Thank you. The case aside, Mr. Ensign, we'll take a short recess. Thank you, Your Honor.
judges: Kozinski, Kleinfeld, Rawlinson